Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for Monica Hujazi

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re<br><br>MONICA HUJAZI<br><br>Alleged Debtor | Case No. 13-30477<br><br>DATE: April 25, 2013<br>TIME: 10:00 a.m.<br>JUDGE: Honorable Hannah Blumenstiel |

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

## I. SUMMARY

This case presents the disturbing spectacle of four lawyers joining together to place their client in involuntary bankruptcy. The Court need not decide whether, as an abstract question of legal ethics, this conduct falls within the furthest extreme of permissible collection efforts by lawyers.

Here, all four attorney petitioners filed false oaths which became the foundation of the Involuntary Petition. Specifically, although all were aware that their fee claims were deeply disputed – two were the subject of malpractice lawsuits and one other had admitted to committing malpractice in the representation of the Alleged Debtor – all swore that their claims were not the subject of bona fide dispute.

This involuntary bankruptcy petition must be dismissed. Attorneys' fees and damages, including punitive damages, should be awarded against the petitioners.

## II. STATEMENT OF THE RELEVANT LAW

An involuntary bankruptcy petition may be prosecuted only by a creditor whose claim is not "the subject of bona fide dispute as to liability or amount." Section 303(b)(1). The provision regarding bona fide disputes was enacted as part of the 1984 Amendments to the Bankruptcy Code. Senator Baucus, the proponent of the amendment, explained it as follows:

> Some courts have interpreted section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good-faith dispute over his or her liability. . . .
>
> . . . Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors.
>
> [This amendment] is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion.

Congressional Record, quoted in Ponoroff, Lawrence "Involuntary Bankruptcy and the Bona Fides of a Bona Fide Dispute", 65 IND. L. J. 315, 334 (1990).

Applying that provision, the courts are called upon to determine whether there is an objective basis for a bona fide dispute. *In re Vortex Fishing Systems, Inc.,* 262 F.3d 985 (9th Cir. 2001).

In considering this element, the Court does not resolve the merits of the dispute, but only evaluates whether it exists. *In re Byrd*, 357 F.3d 433, 437 (4th Cir. 2004) ("The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists. ") "The burden is on the petitioning creditors to show that no bona fide dispute exists." *In re Vortex Fishing Sys., Inc.,* 277 F.3d 1057, 1064 (9th Cir. 2002).

In this case, each of the attorney petitioners were aware that Ms. Hujazi believed he had committed malpractice in performing the services for which he sought compensation, and in two cases malpractice lawsuits had been filed. The attorneys were aware that their claims were the subject of bona fide dispute. *Vortex Fishing, supra,* 277 F.3d at 1067 ("[T]he existence of affirmative defenses may suggest that a bona fide dispute exists;" citing Colliers); *In re Biogenetic Technologies, Inc*., 248 B.R. 852 (Bankr. M.D. Fla. 1999) (where alleged debtor and petitioning creditor were engaged in litigation with each other which had been set for trial, petitioning creditor's claims were in bona fide dispute, requiring dismissal of involuntary petition.)

If the involuntary petition is not supported by at least three creditors whose claims are *not* in bona fide dispute, it must be dismissed. Section 303(b)(1).

## III.    FACTS

All four of the petitioning creditors are members of the Bar of this State, and assert claims for fees allegedly incurred in the course of performing legal services for Ms. Hujazi. All four attorneys signed petitions asserting, under a penalty of perjury, that their claims were not the subject of bona fide dispute.

All of the attorneys knew their claims were disputed. In two cases, Ms. Hujazi had filed malpractice actions against the attorneys. In one other case, the attorney had acknowledged in writing the commission of malpractice. None of these three could honestly assert that his claim was not subject to bona fide dispute. The fourth attorney knew that his clients were deeply dissatisfied and in response elected not to pursue recovery or even send bills to Ms. Hujazi for the past couple of years. Specific factual assertions presenting an objectively appropriate basis on which Ms. Hujazi maintains bona fide disputes of each of the fee claims is presented in the accompanying Declaration and its attachments.

In sum, none of these attorneys were permissible petitioning creditors and all of them knew it, at least three indisputably. The purpose of this involuntary may be unclear – evading malpractice exposure, coercing the collection of deeply disputed claims, crushing a client who offended them – but one thing is clear: this involuntary petition was not filed for any proper purpose.

The specific circumstances of each of the Petitioners are addressed separately, since their culpability, and hence the magnitude of the award against each of them, differs.

### *A. Sidney Luscutoff / Recoverex*

Sidney Luscutoff of Luscutoff Lendormy & Associates (the "Luscutoff Firm") had been a lawyer representing Ms. Hujazi and her family for more than 20 years before the relationship soured. On August 25, 2011, Ms. Hujazi filed a Complaint in the Superior Court of the State of California for the City and County of San Francisco against Luscutoff and the Luscutoff Firm asserting claims for malpractice (the "Luscutoff Malpractice Complaint"); attached as Exhibit A to the. Hujazi Declaration.

Thereafter, Luscutoff filed a separate action against Ms. Hujazi in the same Court seeking attorney's fees incurred in the representation of Ms. Hujazi A copy of the Complaint initiating the action entitled *Recoverex v. Monica Hujazi and Zuercher Trust*, and assigned Case No. CGC 12-519577 is attached as Exhibit B to the Hujazi Declaration. (The Luscutoff Firm's claims for attorneys' fees were assigned as a collection device to Recoverex, an entity Luscutoff controls.

Believing that the automatic stay associated with the other defendant barred prosecution of the action, Ms. Hujazi did not file a timely Answer and Luscutoff sought entry of a default against her in the Luscutoff Collection Action. Ms. Hujazi promptly moved for relief from the entry of the default The Memorandum of Points and Authorities and the Notice of Motion, to which the proposed Answer was attached, are attached as collective Exhibit C to the Hujazi Declaration. The proposed Answer asserted 16 Affirmative Defenses.

Luscutoff filed Opposition papers implicitly acknowledging that relief from the entry of default should be granted, but arguing that the relief should be conditioned dismissing certain Affirmative Defenses raised in the proposed Answer. The Opposition is attached as Exhibit D to the Hujazi Declaration.

1       The Court rescheduled the hearing on Ms. Hujazi's request for relief from entry of default for March 8, 2013. The Court issued a tentative ruling to grant relief from the entry of default.

      On the eve of the hearing, Luscutoff commenced the instant involuntary case and then promptly filed a Notice of Stay in the Superior Court, asserting that the Involuntary Petition he had just filed against Ms. Hujazi barred the Superior Court from granting her Motion for Relief from Default. A copy of the Notice of Stay is attached as Exhibit E to the Hujazi Declaration. In context, this can only be viewed as extraordinary gamesmanship.

      For present purposes, the only question is whether Luscutoff could honestly swear that his claim was not "in bona fide dispute". Clearly, he could not. The pendency of the Motion for Relief from Default and of the Luscutoff Malpractice Action demonstrated that Luscutoff's claims against Ms. Hujazi were very much the subject of a bona fide dispute. Luscutoff, and Recoverex, his assignee, cannot qualify as petitioning creditors because their claim is the subject of bona fide dispute.

### B.    *Michael Grodsky*

      Much of the litigation in which Ms. Hujazi found herself was venued in Los Angeles County. She retained Michael Grodsky ("Grodsky") to represent her in some of those cases.

      Ms. Hujazi had filed a malpractice action against Harold Greenberg, assigned Case No. BC 449055 in the Superior Court of the State of California for the County of Los Angeles (the "Greenberg Malpractice Action"). The Court set a Case Management Conference for February 14, 2011, which Ms. Hujazi failed to attend. In response, the Superior Court set an Order to Show Cause re: Dismissal for March 23, 2011.

      Ms. Hujazi retained Grodsky to make an appearance in response to the Order to Show Cause. He did so, and the Order to Show Cause was continued to June 2, 2011. Mr. Grodsky appeared at the subsequent order to Show Case hearing, and it was continued to July 5, 2011.

      Grodsky failed to advise Ms. Hujazi of the continued hearing set for July 5, 2011, and failed to appear himself. Unsurprisingly, the case was dismissed. Ms. Hujazi filed an unsuccessful Motion to vacate the dismissal, in support of which Grodsky filed a Declaration admitting to the foregoing malpractice. The moving papers, including Mr. Grodsky's Declaration, are attached as collective

Exhibit G to the Hujazi Declaration. When the Motion was denied, affirmative relief against Greenberg was time-barred, so her malpractice claims could thereafter be asserted only as offsets and defenses against a collection action, which Greenberg never filed.

Grodsky is aware that any affirmative recovery on Ms. Hujazi's material claims against Greenberg was lost due to his negligence. No doubt anticipating that any attempt to assert a claim against Ms. Hujazi would be met with a malpractice counter-claim, Grodsky "laid low" until joining in the instant involuntary petition.

For present purposes, the only question is whether Grodsky could honestly swear that his claim was not "in bona fide dispute". Clearly, he could not. He had affirmatively acknowledged the existence of Ms. Hujazi's meritorious malpractice claims against him, which had resulted in the loss of any affirmative recovery from Greenberg. He was acutely aware that his claims against Ms. Hujazi were very much the subject of a bona fide dispute. In its context, Grodsky's signature on the Involuntary Petition, subscribing to the assertion that his claim was not the subject of a bona fide dispute, was a false oath, and entirely inconsistent with Rule 9011.

### C. *Harold Greenberg*

As noted, Ms. Hujazi attempted to prosecute a malpractice action against Harold Greenberg ("Greenberg"). The Complaint is attached as Exhibit G to the accompanying Hujazi Declaration. As a result of Grodsky's failure to advise Ms. Hujazi of the continued Order to Show Cause hearing and his failure to attend it, the Complaint was dismissed. Since the malpractice claims were then time-barred, Ms. Hujazi could not obtain an affirmative recovery against Greenberg.

For present purposes, the only question is whether Greenberg could honestly swear that his claim was not "in bona fide dispute". Clearly, he could not. The existence of the Greenberg Malpractice Action demonstrated that Greenberg's claims against Ms. Hujazi were very much the subject of a bona fide dispute. Greenberg's failure to even submit a bill for the asserted fees in the past several years attests to his knowledge of the dispute. In its context, Greenberg's signature on the Involuntary Petition,

subscribing to the assertion that his claim was not the subject of a bona fide dispute, was a false oath, and entirely inconsistent with Rule 9011.

### D. Allan Hyman

Following the termination of Luscutoff's employment, Allen Hyman was asked to substitute into several lawsuits on behalf of Ms. Hujazi and the Zuercher Trust. He began his representation in September of 2010, and the relationship rapidly deteriorated. The matters on which Mr. Hyman was engaged involved a number of urgent or emergency matters, and Ms. Hujazi perceived that he was not communicating with her or responding to the matters in a timely fashion. By February of 2011, Mr. Hyman had moved to withdraw as counsel in most of the matters. Ms. Hujazi was clear in her assertion that his conduct had been injurious to her interests.

For present purposes, the only question is whether Hyman's claim was not "in bona fide dispute." Clearly, it was in bona fide dispute. While Ms. Hujazi's dissatisfaction was apparent, arguably he was not attuned to it. Ms. Hujazi accepts that under the less compelling facts presented by Hyman, a substantial award against him may not be appropriate.

## IV. CONCLUSION

Congress amended the Bankruptcy Code to prevent involuntary petitions from being "misused" "as a tool of coercion" where the debts at issue are the subject of a "legitimate and good-faith dispute" over liability. Clearly, Ms. Hujazi believes that the four attorneys who have banded together to file this involuntary bankruptcy petition have committed malpractice and caused her tremendous damages. For present purposes, this Court is not called upon to determine the merits of these claims and to weigh the nature or magnitude of the petitioners failings or to determine the reasonable value, if any, of the services they did perform.

The only issue before the Court is whether this involuntary case can go forward, and issue which turns on whether the claims of the petitioning creditors are in bona fide dispute. The petitioners have the burden on that issue, and it is a burden that they cannot possibly sustain. Rather, the Court can readily infer that they brought this involuntary petition in order to coerce the payment of claims they knew to be deeply disputed presenting precisely the "misuse of the bankruptcy system" Congress sought to proscribe.

This involuntary case must be dismissed.

DATED: March 20, 2013 Respectfully submitted,

ST. JAMES LAW, P.C.


By: /s/ *Michael St. James* .
    Michael St. James
Counsel for Monica Hujazi