Michael St. James, CSB No. 95653
ST. JAMES LAW, P.C.
155 Montgomery Street, Suite 1004
San Francisco, California 94104
(415) 391-7566 Telephone
(415) 391-7568 Facsimile
michael@stjames-law.com

Counsel for Monica Hujazi

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| In re<br><br>MONICA HUJAZI<br><br>Alleged Debtor | Case No. 13-30477<br><br>DATE: April 25, 2013<br>TIME: 10:00 a.m.<br>JUDGE: Honorable Hannah Blumenstiel |

**DECLARATION OF MONICA HUJAZI IN SUPPORT OF MOTION TO DISMISS**

I, Monica Hujazi, declare under penalty of perjury:

1. I am an individual, over the age of 18, and the subject of the instant involuntary petition. I make this declaration of my own personal knowledge, and if called as a witness I could and would competently testify as follows:

2. Until approximately 2003, I was a successful business woman, enjoying substantial assets and excellent credit. Over the past decade, my circumstances have deteriorated significantly due, in substantial part, to the poor counsel, advice and representation I have received from the four lawyers who joined together to file this involuntary petition against me.

*Luscutoff*

3. Sidney Luscutoff ("Luscutoff") and his firm, Luscutoff Lendormy & Associates (the "Luscutoff Firm"), has been a lawyer for myself and my family members for more than 20 years. Following his counsel and advice has led to some of my most disastrous reverses of the past decade.

4. I trace the beginning of my problems to the purchase of an apartment property located at 1168 Bellevue Avenue in Los Angeles. Under the purchase contract, the seller was required satisfactorily to complete certain specified repairs prior to the sale. The seller failed to do so, and proposed instead to fund a hold-back of approximately $65,000 to fund the repairs. I wanted to declare the purchase agreement breached, but Luscutoff urged me to close the sale on the terms the seller proposed, and I reluctantly agreed. Luscutoff failed to obtain protections to ensure that the property could, in fact, be completely repaired for the cost of the hold-back. I purchased the property in approximately March of 2003.

5. Within a few weeks, the building and I were the subject of a number of regulatory proceedings and thereafter a tenant lawsuit (the "*Gastaluam* Lawsuit") for substandard conditions which had been concealed by the seller and represented not to exist. I ultimately expended approximately $2.8 million to repair those conditions.

6. Luscutoff represented me in much of this litigation. In the course of the litigation, he negotiated and implemented a settlement under which the insurer, Admiral, would fund a policy limits payment to the tenants. The relevant policy covered both 1168 Bellevue and 621 S. Union, so the policy limits settlement left me effectively uninsured by Admiral on 621 S. Union.

7. On November 1, 2007, a number of tenants at 621 S. Union, Los Angeles, CA filed an action in the Los Angeles Superior Court entitled *Maria Vasquez et al. v. Monica Hujazi et al.*, assigned case number BC380110 (the "*Vasquez* Lawsuit"). Luscutoff represented me in my efforts to secure insurance coverage for the Vasquez Lawsuit. He also negotiated and implemented a settlement of the Vasquez Lawsuit without my consent or knowledge.

8. Luscutoff failed to include a confidentiality provision in this settlement. As a consequence, the tenant "success" in the Vasquez lawsuit was widely publicized, with the result that tenants at other properties and in the remaining tenants in the 621 S. Union property filed suit against me thereafter.

9. I believe that each of the foregoing constituted malpractice which caused severe harm and damages to me. Luscutoff and the Luscutoff Firm represented me in a number of other matters and engaged in other conduct I believe to constitute malpractice. I identify the foregoing instances only because they are clear and straightforward.

10. In August of 2011 I filed a malpractice action against Luscutoff in the Superior Court of the State of California for the City and County of San Francisco. A true and correct copy of the Complaint initiating that action, and the First Amended Complaint recently filed in that action, are attached hereto as collective Exhibit A (the "Luscutoff Malpractice Action"). The Luscutoff Malpractice Action remains pending and has not been resolved.

11. In late 2012, the Luscutoff Firm filed suit against me and the Zuercher Trust seeking payment of attorney's fees. I understand that the Luscutoff Firm assigned its claim for fees to Recoverex, an entity it controls, as a collection device. A true and correct copy of the Complaint

1  initiating the Luscutoff Collection Action entitled *Recoverex v. Monica Hujazi and Zuercher Trust*, and assigned Case No. CGC 12-519577 is attached hereto as Exhibit B.

12. The Zuercher Trust, a co-defendant in the Luscutoff Collection Action, is the subject of a pending bankruptcy case. I understood that the automatic stay associated with its case barred prosecution of the Luscutoff Collection Action, so I did not file a timely Answer. Luscutoff immediately sought entry of a default against me in the Luscutoff Collection Action.

13. I immediately moved the Court for relief from the entry of the default. True and correct copies of my Notice of Motion, to which my proposed Answer was attached, and my Memorandum of Points and Authorities, are attached hereto as collective Exhibit C.

14. Luscutoff filed Opposition papers implicitly acknowledging that relief from the entry of default should be granted, but arguing that the relief should be conditioned on dismissing certain Affirmative Defenses raised in my proposed Answer. A true and correct copy of the Opposition is attached hereto as Exhibit D.

15. The Court rescheduled the hearing on my request for relief from entry of default for March 8, 2013. The Court issued a tentative ruling to grant relief from the entry of default.

16. On the eve of the hearing, Luscutoff commenced the instant involuntary case and then promptly filed a Notice of Stay in the Superior Court, asserting that the Involuntary Petition he had filed against me prevented the Superior Court from granting my request for relief from the default. A true and correct copy of Luscutoff's Notice of Stay is attached as Exhibit E hereto.

17. Thereafter, the Superior Court entered an Order granting my motion to set aside the default, a true and correct copy of which is attached hereto as Exhibit F. I have since filed my Answer.

18. During most of the period 2007 through 2010, the Luscutoff Firm did not submit bills to me. Instead, they were funded by the various insurance companies as my *Cumis* counsel. I have never received an account of what the Luscutoff Firm billed and collected from insurance companies and the amounts it contends that I owe. I believe that the amount asserted in the involuntary petition is exaggerated, but in any event it is a fraction of the damages I suffered as a result of Luscutoff's malpractice.

*Grodsky*

19. Much of the litigation I found myself embroiled in over the past 7 years was venued in Los Angeles County. After my unsuccessful experiences with Luscutoff and with Harold Greenberg ("Greenberg"), discussed below, I retained Michael Grodsky ("Grodsky") to represent me in a number of the pending cases.

20. Grodsky's involvement in my cases became increasingly distant after about six months. He ultimately asserted that he was medically unable to represent me in connection with a trial relating to 1645 N. Alexandria. My observation of his conduct in court in connection with my cases was distressing.

21. I filed a malpractice action against Harold Greenberg, assigned Case No. BC 449055 in the Superior Court of the State of California for the County of Los Angeles (the "Greenberg Malpractice Action"). The Court set a Case Management Conference for February 14, 2011, which I failed to attend. In response, the Superior Court set an Order to Show Cause re: Dismissal for March 23, 2011.

22. I retained Grodsky to make an appearance in response to the Order to Show Cause. He did so, and the Order to Show Cause was continued to June 2, 2011. Mr. Grodsky appeared at the subsequent order to Show Case hearing, and it was continued to July 5, 2011.

23. Mr. Grodsky failed to notify me of the continued July 5th hearing or to attend it. I was entirely unaware of the July 5th continued Order to Show Cause hearing until after it occurred. I then learned that Grodsky failed to appear, as a result the Court dismissed the Greenberg Malpractice Action.

24. I filed a Motion to vacate the dismissal. Grodsky signed a Declaration in support of that Motion, admitting that he failed to attend the continued hearing or to tell me about it, directly resulting in the dismissal. True and correct copies of the moving papers, including Mr. Grodsky's Declaration, are attached hereto as collective Exhibit G.

25. Unfortunately, my Motion to vacate the dismissal was denied, and by that time affirmative relief against Greenberg was time-barred, so my malpractice claims could thereafter be asserted only as offsets and defenses against any claim asserted by Greenberg against me.

26. My relationship with Grodsky ended at about the time he failed to attend the July 5, 2011 hearing. I believe I had paid him around $130,000 during the course of the relationship, and I believe

he then had an outstanding bill for about $100,000. I note with incredulity that he asserts a claim for $312,940 in the Involuntary Petition.

27. Grodsky is aware that any affirmative recovery on my material claims against Greenberg was lost due to his negligence. Had Grodsky attempted to assert a claim against me for fees, I would have responded with a malpractice counter-claim. Presumably as a consequence, in the ensuing nearly two years Grodsky never billed me, filed suit or otherwise attempted to collect any fees he now contends are owed to him.

28. I believe that the amount Grodsky asserted in the involuntary petition is exaggerated, but in any event it is a fraction of the damages I suffered as a result of his malpractice.

*Greenberg*

29. As noted, following the acquisition of Bellevue in 2003, I was plunged into litigation with tenants and regulators about substandard conditions. Luscutoff recommended that I bring in Harold Greenberg as counsel to assist on certain pieces of litigation, including certain strict liability criminal cases that had been filed against relating to housing conditions.

30. Greenberg represented me for many years, receiving fees exceeding $1.5 million for his services.

31. In 2009-10, Greenberg consented to the appointment of a Receiver, with respect to both 621 S. Union and 207 N. Oxford, even though I had specifically instructed him to oppose the appointment of a receiver in each case. He then cooperated with encumbering the N. Oxford property to provide a source of funds for the Receiver, without my consent or approval. He admitted to being under the influence of strong pain medications, which left him unable effectively to represent me.

32. As noted above, I responded by attempting to prosecute a malpractice action against Harold Greenberg ("Greenberg"). A true and correct copy of my Complaint is attached as Exhibit I hereto. Although the Complaint was served on him, he never filed an Answer or otherwise responded to it.

33. Although Mr. Grodsky's malpractice prevented me from obtaining an affirmative award against Mr. Greenberg, I assume he understood that his malpractice would be asserted as a defense if he ever attempted to assert a claim against me for fees. I have not received a bill from Greenberg in many years. Greenberg never filed suit or otherwise attempted to collect any fees he now contends are owed to him. I believe that the amount Greenberg asserted in the involuntary petition is exaggerated, but in any event it is a fraction of the damages I suffered as a result of his malpractice.

*Hyman*

34. In August of 2010, as I prepared to terminate Luscutoff's representation in several lawsuits, I asked Allen Hyman to substitute in as counsel for me and for the Zuercher Trust. He began his representation in September of 2010, and the relationship rapidly deteriorated. Most of the matters on which I had engaged Mr. Hyman were urgent or emergency matters, but he was not communicating with me or responding to the matters in a timely fashion.

35. By February of 2011, Mr. Hyman had moved to withdraw as counsel in most of the matters. I clearly communicated to him my view that his conduct had been very injurious to my interests. I received a demand or notice of right to arbitrate from Mr. Hyman about two years ago. Since then, I have not received a bill or invoice or other effort to collect fees.

36. I believe that the amount Mr. Hyman asserted in the involuntary petition is exaggerated, but in any event it is a fraction of the damages I suffered as a result of his representation.

*General*

37. I have materially more than 12 creditors. I am generally paying my debts as they come due.

38. I am the Trustee of the Zuercher Family Trust of 1999, which filed a Chapter 11 bankruptcy case in September of last year, assigned Case No. 12-32747 (the "Zuercher Case"). I executed its Schedules of Liabilities. Understanding that I was required to identify every person who

might think himself a creditor, I included Luscutoff, Grodsky and Hyman in Schedule F as potentially asserting claims which were unliquidated, contingent and disputed. I believe that the claims of those petitioners against the Trust and I are largely co-extensive, and that this filing confirmed my assertion that the petitioners claims are deeply disputed.

39. Luscutoff is aware of the circumstances of the Zuercher Case and of the appointment of a trustee in that case. I believe that this involuntary bankruptcy case was filed opportunistically, in response to perceptions that I was under severe financial pressure and would be unable to respond to it, in hopes of forcing me to pay deeply disputed claims.

I declare under penalty of perjury according to the laws of the United States of America that the foregoing is true and correct and that this Declaration was executed in San Mateo, California on March 20, 2013.

/s/ Monica Hujazi
Monica Hujazi

### Exhibits to Hujazi Declaration

A.  First Amended Complaint and original Complaint, *Hujazi v. Luscutoff*

B.  Complaint, *Recoverex v. Hujazi*

C.  Notice of Motion to Set Aside Entry of Default and Points & Authorities

D.  Opposition

E.  Notice of Stay

F.  Order Setting Aside Default

G.  Motion to Vacate Dismissal of *Hujazi v. Greenberg* and Declaration of Grodsky

H.  Complaint in *Hujazi v. Greenberg*